**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

AVANTI PRESS, INC.,

Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

Defendants.

Case No.: 1:26-cv-12214

Judge Jorge L. Alonso

Magistrate Judge Beth W. Jantz

**PLAINTIFF'S MEMORANDUM ESTABLISHING**
**JOINDER UNDER FED. R. CIV. P. 20**

Plaintiff Avanti Press, Inc. ("Avanti Press" or "Plaintiff") is a greeting card publisher and one of the most recognized greeting card brands in the world, whose "Cat Reading Newspaper" photo collage is protected by U.S. Copyright Registration No. VA 1-748-967 (the "Avanti Press Work"). [1] ¶¶ 3, 5, 8; [1-1]. Two hundred eight anonymous storefronts on Amazon, Walmart, Temu, and an independent website reproduced and displayed the Avanti Press Work without authorization, at the same time, on products offered to U.S. consumers online. [2]; **Exhibit 1**. The overlap among them is not generic. One hundred seventy-four of the 208 storefronts sell one of just two derivative designs built from the Avanti Press Work: eighty-five display it overlaid with the slogan "Reading Because Murder Is Wrong," and eighty-nine display the same image overlaid with "That's What I Do, I Read Books and I Know Things." Exhibit 1. Each group of storefronts repeats not only the same image and the same added slogan but also the same layout and listing titles that track one another nearly word for word across Amazon, Walmart, and Temu. *Id.* Many storefronts also copy the same product description verbatim, some across both groups. [13-1].

Pursuant to the Court's October 7, 2026, Order [16], Plaintiff respectfully submits this memorandum addressing the propriety of joinder. Three points frame Plaintiff's showing. First, this record supplies the specific factual connection that *Cuomo v. P'ships*, No. 26 C 7119, Dkt. 19 (N.D. Ill. July 28, 2026) (Alonso, J.), found missing among the Weezer T-shirt sellers: matching designs, slogans, layouts, and listing language tying the storefronts within each group to one another. Second, Plaintiff asks the Court to find joinder proper as to all 208 Defendants or, at a minimum, as to each slogan group. Third, should the Court find any Defendant misjoined, Plaintiff asks that the claim be severed on the existing record rather than dismissed, because dismissal would multiply the cost of every step toward judgment and threaten Plaintiff's ability to identify and serve Defendants, obtain third-party records of their infringing sales, and reach judgment, while joinder imposes no harm on Defendants that the Court could not cure later. Plaintiff respectfully requests the Court's guidance on how it wishes Plaintiff to proceed.

## ARGUMENT

Under Rule 20(a)(2), multiple defendants may be joined in a single action if: (1) the claims arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there is at least one question of law or fact common to all defendants. Fed. R. Civ. P. 20(a)(2). The purpose of Rule 20(a) "is to enable economies in litigation." *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000). Like every Rule, it must be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the [Federal] Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties[,] and remedies is strongly encouraged.").

## I. The Record Establishes the Specific Factual Connection Among the Storefronts That *Cuomo* Requires, and the Claims Are Logically Related

*Cuomo* sets the standard this memorandum must meet. Joinder is proper, the Court explained, where "Schedule A plaintiffs can show that certain defendants are commonly owned or are working in concert, based on specific factual allegations." *Cuomo*, Dkt. 19, at 5. Absent "some specific showing that the defendants' infringing activities are likely to be factually connected," the defendants are misjoined. *Id.* at 2. This record makes that specific showing.

The connection is visible on the face of the listings. Every accused product reproduces the same registered image, the "Cat Reading Newspaper" collage, and 174 of the 208 storefronts reproduce one of just two derivative designs built from it. Eighty-five storefronts, spanning Amazon, Walmart, and Temu, sell the Avanti Press Work overlaid with the identical added slogan, "Reading Because Murder Is Wrong." Exhibit 1 (e.g., Def. Nos. 1–41 (Amazon); 97–98 (Walmart); 101, 104–106, 127–133 (Temu)). Eighty-nine others, again across all three marketplaces, sell the same image overlaid with "That's What I Do, I Read Books and I Know Things." *Id.* (e.g., Def. Nos. 55–68 (Amazon); 100 (Walmart); 116–121, 151–154 (Temu)). Within each group, the storefronts do not merely sell a similar product; they repeat the same image, the same added slogan, the same layout, and listing titles that track one another nearly verbatim. Many go further and copy the same product description word for word. Def. Nos. 26 and 29 share an identical "Effortless Indoor & Outdoor Charm" description, and Def. No. 14 in the first group shares an identical description ("Material: wall decorative sign is made of high quality tin metal, durable, will not be deformed, waterproof, high temperature resistant and will not fade") with Def. Nos. 57, 65, 66, and 67 in the second. [13-1] at 15, 27, 30, 58, 66–68. That shared copy crosses the slogan line, suggesting a connection between the two groups as well as within each. Shared supplier artwork or copying of a public listing might explain an isolated similarity, but the

combination here is more specific: the same added slogan, the same composition, and, in many listings, the same product copy, repeated across three platforms. And to the extent a common supplier accounts for the overlap, a common source is itself a consideration the Federal Circuit treats as probative of connection. *In re EMC Corp.*, 677 F.3d 1351, 1359–60 (Fed. Cir. 2012). That convergence is the "unique word and sentence construction" from which courts in this District have inferred that "the subset of online retailers using those same . . . descriptions are connected to one another." *Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 188 (N.D. Ill. 2020).

The storefronts' own identities reinforce the inference. Many bear transliterated names describing businesses with nothing to do with greeting-card art: an agricultural-products company (No. 1), an aquatic-products seller (No. 12), an agricultural-machinery cooperative (No. 16), and municipal-engineering and construction firms (Nos. 17, 18, 30). [2]; Exhibit 1. Defendants "attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operations." [1] ¶ 7. That concealment is not incidental to the infringement; it is how the operation functions, and it is the reason direct proof of common ownership lies within Defendants' exclusive control.

This is the showing *Cuomo* found absent. There, "[t]he designs on the T-shirts [did] not look remotely alike, except that they use[d] the word 'Weezer,'" and "none of these seven T-shirt sellers use[d] terminology or phrasing that matche[d] any of the other six." *Cuomo*, Dkt. 19, at 4. The Weezer sellers shared a single word and nothing more. Here, the storefronts within each slogan group share the copyrighted image itself, an identical added slogan, a common layout, and matching listing text, exactly the "unique word and sentence construction" that *Estée Lauder* treats

as evidence of connection. 334 F.R.D. at 188. The difference between a shared word and a shared, verbatim listing is the difference *Cuomo* drew.

Plaintiff does not overstate the record. The two slogan groups account for 174 of the 208 storefronts. The remaining 34 storefronts reproduce the same registered Avanti Press Work and sell it on online marketplaces, but Exhibit 1 does not tie them to either slogan group through the same verbatim listing language. As to those 34, the connection is the shared infringement of the same artist and the shared marketplaces, not matching slogans. Plaintiff recognizes that, under *Cuomo*, that showing may not suffice, and Part IV proposes individual severance, not dismissal, for any storefront the Court finds lacks a sufficient factual link. The storefronts thus fall into three groups, keyed to Exhibit 1:

> **Group 1 — "Reading Because Murder Is Wrong" (85 storefronts).** Same registered image, same added slogan, same layout, and matching listing titles, sold across Amazon, Walmart, and Temu. *See* Exhibit 1 (e.g., Def. Nos. 1–41, 97–98, 101, 104–106, 127–133).
>
> **Group 2 — "That's What I Do, I Read Books and I Know Things" (89 storefronts).** Same registered image, same added slogan, same layout, and matching listing titles, sold across Amazon, Walmart, and Temu. *See* Exhibit 1 (e.g., Def. Nos. 55–68, 100, 116–121, 151–154).
>
> **Group 3 — Remaining storefronts (34).** Same registered Avanti Press Work and the same online channels, but no common added slogan or matching listing language tying them to Group 1 or Group 2. *See* Exhibit 1.

On these facts, the storefronts within each slogan group satisfy the specific, listing-level showing *Cuomo* requires. At the very least, the matching designs and verbatim listing language establish the logical relationship that Rule 20 demands.

The governing law confirms what the listings show. Rule 20 permits joinder of defendants against whom relief is sought "jointly, severally, or in the alternative," Fed. R. Civ. P. 20(a)(2)(A), and it authorizes judgment "against one or more defendants according to their liabilities," Fed. R.

Civ. P. 20(a)(3). The Rule thus requires no joint liability. In *United States v. Mississippi*, the Supreme Court reversed a district court that had refused to let six county registrars be sued together for "individual torts committed by them separately with reference to separate applicants," holding that "the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a)." 380 U.S. 128, 142 (1965).

Independent actors satisfy Rule 20 when their claims bear a "logical relationship" to one another. *EMC*, 677 F.3d at 1358; *see In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994); *Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007). "[A]n allegation of joint liability is not required," and "the fact that the defendants are independent actors does not preclude joinder as long as their actions are part of the 'same transaction, occurrence, or series of transactions or occurrences.'" *EMC*, 677 F.3d at 1356. The test requires an "actual link" between the facts underlying each claim, and *EMC* identifies the considerations that show one, including whether the infringement occurred during the same time period, the existence of some relationship among the defendants, the use of identically sourced components, and overlap in the products' development and manufacture. *Id.* at 1359–60. Each points the same way here. The storefronts displayed the Avanti Press Work at the same time. [2]; Exhibit 1. Within each slogan group, they sell the same composite design, and many repeat product descriptions word for word, text that independent sellers would not each have written on their own. [13-1]. That shared design and copy supports an inference of a common source or overlapping product development, and the descriptions that cross the slogan line point to some relationship among the storefronts themselves. Those facts supply the logical relationship within each slogan group and satisfy the first inquiry under Rule 20.

## II. Every Claim Presents the Same Questions of Law and Fact

Rule 20's second requirement, that "any question of law or fact common to all defendants will arise in the action," Fed. R. Civ. P. 20(a)(2)(B), is readily met. The Rule "does not require that *all* questions of law and fact raised by the dispute be common." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974) (emphasis added).

Every Defendant did the same thing: each published the registered Avanti Press Work on an online listing displayed to consumers in this District, and each listing was captured and preserved. [13-1]; Exhibit 1. Each claim turns on the same questions: whether Plaintiff owns a valid copyright, whether the Defendant's use infringes it, whether the infringement was willful, and what remedies apply under 17 U.S.C. §§ 502, 504, and 505. That Defendants sold different products at different prices matters no more than the "different effects" of a common policy did in *Mosley*, which were "immaterial for the purposes of determining the common question of law or fact." 497 F.2d at 1334.

## III. *Cuomo* Does Not Foreclose Joinder of These Copyright Claims

### A. The Record Satisfies the Logical-Relationship Test *Cuomo* Applied

*Cuomo* dismissed a Lanham Act complaint for misjoinder after holding that "occurrence" means no more than "transaction," so that the logical-relationship test governs, and after finding that the *Bose* "swarm" approach lacked a "limiting principle." *Cuomo*, Dkt. 19, at 1, 3–4 (discussing *Bose Corp. v. P'ships*, 334 F.R.D. 511, 516 (N.D. Ill. 2020)). Plaintiff's showing does not depend on the broad reading of "occurrence" that *Cuomo* rejected. It rests on the logical-relationship test *Cuomo* applied, under which "independent defendants satisfy the transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action," *id.* at 4 (quoting *EMC*, 677 F.3d at 1358), and that test is satisfied here by the matching designs and listing language set out in Part I. That test, applied to listing-level overlap of this kind,

supplies the limiting principle *Cuomo* found missing from the swarm theory: it reaches storefronts whose listings share specific, overlapping facts, not every seller of the same work. As explained below, the Copyright Act confirms that such storefronts may be joined even though they are separately liable.

B. The Copyright Act Confirms That Separately Liable Infringers May Be Joined

The Copyright Act confirms that the absence of joint liability is no obstacle to joinder. Like Rule 20, the Act contemplates that separately liable infringers may be sued together. Statutory damages are awarded "for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally." 17 U.S.C. § 504(c)(1). The House Report explains that "*where separate infringements for which two or more defendants are not jointly liable are joined in the same action, separate awards of statutory damages would be appropriate*." H.R. Rep. No. 94-1476, at 162 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5778, *quoted in Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 946–47 (9th Cir. 2011) (emphasis added). The number of awards thus turns on the number of works infringed and the number of individually liable infringers, not on whether the infringers coordinated. *Accord Sullivan v. Flora, Inc.*, 936 F.3d 562, 566–67 (7th Cir. 2019); *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) (statutory damages turn on "the number of works infringed, not the number of infringements").

Read together, the Rule and the statute separate two questions that the joinder inquiry can conflate: who may be sued together, and how many awards follow. The first turns on the logical relationship shown in Part I. The second turns on ownership: common ownership identifies which storefronts collapse into a single infringer, jointly and severally liable for one award per work; separate ownership means a separate award per work against each. Once the claims are logically related, Rule 20 permits them to proceed together whichever way ownership falls, "according to

their liabilities." Fed. R. Civ. P. 20(a)(3). Section 504 thus confirms that the absence of joint liability is no bar to joinder; it does not itself supply the factual connection Rule 20 requires.

The statute also bears on the drug-dealer and concert-vendor analogies of *Anagram* and *Toyota*. *See Cuomo*, Dkt. 19, at 4–5 (quoting both). To the extent those analogies suggest that defendants belong in one suit only if they cooperate with one another, the Copyright Act, like Rule 20, assumes otherwise. It contemplates that one action may include both infringers who are "liable individually" and infringers who are "liable jointly and severally," and it calibrates the remedy to each: a separate award per work against each individually liable infringer, and a single shared award per work against each jointly liable group. 17 U.S.C. § 504(c)(1); H.R. Rep. No. 94-1476, at 162. What the statute does not do is dispense with the factual relationship Rule 20 requires; that relationship comes from the record set out in Part I.

C. Each Claim Inflicts the Same Harm on a Single Owner's Market

The nature of the harm also answers the concern that each Defendant presents only an "individualized dispute with Plaintiff over whether it has the right to sell products" without "paying Plaintiff a licensing fee." *Cuomo*, Dkt. 19, at 4. Avanti Press does not merely license a band name. It publishes and distributes its own greeting cards featuring its copyrighted images, [1] ¶¶ 3, 8, and it licenses those images for the same kinds of merchandise Defendants sell, from T-shirts and mugs to posters and lawn flags. *See Licensing*, Avanti Press, https://www.avantipress.com/licensing/ (last visited Oct. 16, 2026). Each unauthorized copy therefore competes in the market Avanti Press supplies through its own products and its licensees, and erodes the value of the work itself.

Defendants bring about that harm the same way: each infringer "take[s] advantage of a set of circumstances—the anonymity and mass reach afforded by the internet and the cover afforded by international borders—to violate [the plaintiff's copyrights] with impunity." *Neman Bros. &*

*Assocs., Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 24 C 05666, Dkt. 112, at 1–2 (N.D. Ill. Jan. 23, 2025) (quoting *Bose*, 334 F.R.D. at 516); *see also Zou v. Entities*, No. 23-cv-16600, Dkt. 60, at 2 (N.D. Ill. Mar. 8, 2024) (Kendall, J.) (finding "a clear logical relationship between Defendants' actions, as each Defendant copied [Plaintiff's] work . . . and set up online stores to sell the counterfeits under a cloak of anonymity"). That conduct converges on a single owner, and the *Neman* court recognized it as the "surreptitious conduct that is the 'defining aspect of the harm'" and that "creates a logical relationship among the parties and claims." *Neman*, Dkt. 112, at 2. The harm is competitive and concentrated on a single owner's market, inflicted many times over, by many hands, at once. That is why the claims belong together rather than scattered across as many as 208 separate suits.

D. <u>The Court's Remaining Authorities Involved Different Records</u>

The Court's remaining authorities describe different cases. *Tang* arose under the patent-specific joinder statute, which bars joinder "based solely on allegations that [defendants] each have infringed the patent," 35 U.S.C. § 299(b); the shared words and images there were "generally descriptive of the function" of the product; and the two defendants at issue had appeared and were "defending the case in earnest," the very circumstance in which courts have contemplated severance. *Tang v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 23 C 4587, 2024 WL 68332, at *1–3 (N.D. Ill. Jan. 4, 2024). The same opinion reaffirmed that "joinder of multiple alleged counterfeiters . . . is proper under Rule 20" where a swarm descends on a single rights holder. *Id.* at *3. *Anagram*, as *Cuomo* quotes it, rejected joinder of sellers linked only by "the same unlawful activity in the same general vicinity." *Cuomo*, Dkt. 19, at 4–5. Avanti Press relies on far more than shared activity in a shared space: a verbatim overlap in infringing design and listing text concentrated on a single owner's copyrighted work.

Finally, the practical concern that drove *Cuomo*, that defendants "appear, often individually or in small groups, taking disparate positions," *Cuomo*, Dkt. 19, at 3, has a built-in remedy that requires dismissing no one now. Should any Defendant appear and take a position that differentiates it from the others, Rule 21 permits the Court to sever that Defendant at that time, without disturbing the claims against the rest. Fed. R. Civ. P. 21. Keeping Defendants together at the outset thus preserves the Court's full range of options: the tool to address an appearing, differently situated defendant remains available whenever the need arises. *See* Part IV, *infra*.

E. Any Remedy for Misjoinder Should Be Severance, Not Dismissal

If the Court concludes that some or all Defendants are not properly joined, the question becomes remedy. *Cuomo*'s procedure was to dismiss the complaint without prejudice and grant leave to replead against a single defendant or a properly joined smaller group. *Cuomo*, Dkt. 19, at 1, 5. Rule 21 supplies a path to the same end without the collateral harm dismissal carries: "Misjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. The Rule instead allows the Court, "on just terms, [to] add or drop a party," or to "sever any claim against a party." *Id.*

The two options are not equivalent, and the difference matters here. A dropped defendant is dismissed, and the complaint against it treated "as if it never existed." *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (internal quotation marks omitted). A severed claim, by contrast, is not dismissed: "the clerk of court creates multiple docket numbers for the action already on file, and the severed claims proceed as if suits had been filed separately." *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 864 (7th Cir. 2018) (quoting *Lee v. Cook Cnty.*, 635 F.3d 969, 971 (7th Cir. 2011)). The Seventh Circuit therefore requires a court "to avoid gratuitous harm to the parties" in

remedying misjoinder, and to sever rather than dismiss where dismissal would carry adverse consequences. *Elmore*, 227 F.3d at 1012; *see Dorsey v. Varga*, 55 F.4th 1094, 1108 (7th Cir. 2022).

Severance on the existing record is the better course here for concrete reasons. Dismissal would require Plaintiff to refile as many as 207 new complaints and move anew for expedited discovery, electronic service, and injunctive relief in each. More importantly, dismissal would delay any relief, giving anonymous sellers who can "simply pop up somewhere else" the opening to rename or abandon storefronts and vanish before Plaintiff could serve them, subpoena the third-party marketplace and payment records that show the extent of their infringing sales, or obtain a judgment. *Bose*, 334 F.R.D. at 517. Severance avoids the most serious of these harms: a severed claim keeps its original filing date because it "simply continues against the severed defendant in another guise," *DirecTV*, 467 F.3d at 845, and, subject to the Court's orders, the existing record and Plaintiff's motion for expedited discovery [12], once re-noticed, can carry forward without starting over. That is why courts in this District routinely sever rather than dismiss misjoined infringement claims. *Roadget Bus. Pte. Ltd. v. Individuals, Corps., LLCs, P'ships*, 735 F. Supp. 3d 981, 986–87 (N.D. Ill. 2024) (severing, rather than dismissing, misjoined defendants); *Laika, LLC v. P'ships*, 833 F. Supp. 3d 918, 920 (N.D. Ill. 2026) ("Dismissal as a remedy here is inappropriate. Rule 21 militates against it, as does *Elmore*'s command to avoid 'gratuitous harm' to the plaintiff.").

If the Court prefers to narrow the action rather than keep all 208 Defendants together, the natural unit is the slogan group or common operator. That approach mirrors the model *Cuomo* cited with approval, the District of New Jersey's standing order directing that, "[t]o satisfy Rule 20, each complaint shall consist of a single defendant or group of defendants acting under the same operator." *Cuomo*, Dkt. 19, at 5 n.1 (quoting *In re: "Schedule A" Cases*, Standing Order 2025-04

¶ 1 (D.N.J. Sept. 25, 2025)). Plaintiff's alternative request follows the same approach, although a slogan group is defined by shared listing content rather than by a proven common operator: sever each slogan group (the 85 "Reading Because Murder Is Wrong" storefronts and the 89 "That's What I Do, I Read Books and I Know Things" storefronts) into its own case as a properly joined group, with the existing record transferred over, and, as to any remaining Defendant the Court finds lacks a sufficient factual link to either group, sever the claim against that Defendant individually on the existing record rather than dismiss it. And because the product description shared by Def. No. 14 and Def. Nos. 57, 65, 66, and 67 links the two slogan groups, the Court could keep both groups together in a single case. Each slogan group shares the logical relationship Rule 20 requires: the same added slogan, the same layout, and listing titles that track one another nearly verbatim. Once that relationship exists, it does not matter that some storefronts within a group may share an operator and others may not. *See* Parts I, III.B, *supra*.

Whether by dismissal or by severance, fragmenting properly joined claims further than necessary carries real costs. Each severed action would repeat every step from complaint to default judgment, including service, motion practice, and the default proceedings themselves, and would carry its own filing fee and, if injunctive relief were sought, its own bond. *See* 28 U.S.C. § 1914; Fed. R. Civ. P. 65(c). Plaintiff would also be forced to litigate identical ownership, copying, willfulness, and remedy questions storefront by storefront, "a multiplication of expense that would further inhibit [its] ability to protect its legal rights." *First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 253 (N.D. Ill. 2011).

Those costs are not offset by any prejudice to Defendants from joinder. Each remains free to assert every defense available to it; joinder neither merges the claims nor dilutes any defense, and any trial-management concern has its own remedy in separate trials under Rule 42(b), not

dismissal or severance now. *Elmore*, 227 F.3d at 1012; Fed. R. Civ. P. 42(b). Courts in this District have recognized as much, declining to force plaintiffs to splinter a single infringement action into dozens of separate suits. *Laika*, 833 F. Supp. 3d at 921 (declining severance even as to appearing, represented defendants because "it makes sense" to litigate the claims together); *Milwaukee Elec. Tool Corp. v. Individuals*, No. 24 C 12487, Dkt. 156, at 7 (N.D. Ill. May 28, 2025) ("Forcing Plaintiff to file separate cases against 80 different defendants would be an undue burden"). Joinder prevents the very "substantial duplication of effort and time by the parties and the courts" that the logical-relationship test exists to avoid. *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 390 (3d Cir. 2002) (internal quotation marks omitted). Resolving the common questions once, in a single action, is what Rules 20 and 1 exist to secure.

The balance of harms under Rule 21's "just terms" standard favors keeping properly joined Defendants together, largely because the two possible errors are not equally correctable. If the Court keeps Defendants together and a Defendant later appears and shows that its position differs from the rest, the Court can sever that Defendant then, and can order separate trials if trial requires it. Fed. R. Civ. P. 21, 42(b). Dismissal, by contrast, would require Plaintiff to repeat each step toward judgment in new cases, and the combined cost of as many as 208 separate suits could approach or exceed any realistic recovery. *See Elmore*, 227 F.3d at 1012. Delay also gives anonymous sellers time to rename or abandon storefronts and take down the listings that identify them. *See Bose*, 334 F.R.D. at 517. Plaintiff does not minimize the Court's case-management concerns; Rules 21 and 42(b) remain available to address them as the case develops. But dismissal at this stage would risk precisely the "gratuitous harm" *Elmore* directs courts to avoid. 227 F.3d at 1012. Should the Court nonetheless decline to keep all 208 Defendants together, Plaintiff asks that it sever rather than dismiss, as set out above: each slogan group in its own case with the existing

record transferred over, and any remaining Defendant the Court finds lacks a sufficient factual link to either group severed individually on the same terms.

## CONCLUSION

This record supplies the specific, listing-level factual connection *Cuomo* requires: 174 of the 208 storefronts reproduce one of just two derivative designs built from a single registered work, repeating the same added slogan, layout, and listing language across three marketplaces. Many copy the same product description word for word, some across both groups. Those claims are logically related, present common questions, and the Copyright Act confirms that separately liable infringers may be joined in one action. Accordingly, Plaintiff respectfully requests that the Court:

(1) find joinder of all 208 Defendants proper under Rule 20(a)(2);

(2) in the alternative, sever the two slogan groups (174 Defendants), which share product descriptions across the slogan line, into a single case or, failing that, sever each slogan group (85 and 89 Defendants) into its own case; sever any remaining Defendant individually; and transfer the existing record to each new case;

(3) dismiss no Defendant; and

(4) grant Plaintiff leave to re-notice its motion for expedited discovery [12].

Plaintiff respectfully requests the Court's guidance on how it wishes Plaintiff to proceed. All unpublished decisions cited herein without a Westlaw citation are attached as **Exhibit 2**.

DATED: October 16, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084/IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on October 16, 2026, with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all registered attorneys of record.

*/s/ Keith A. Vogt*
Keith A. Vogt